**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| AGAMENV, LLC, a/k/a Dakota Gaming, LLC; Ray Brown; and Steven Haynes, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| Andrew Laverdure, purporting to act in his capacity as an Associate Judge for Turtle Mountain Tribal Court; Mike Malaterre, Cindy Malaterre, Elmer Davis, and Lorne Jay, purporting to act in their capacity as Tribal Council Members, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

Case No. 4:12-cv-074

_____

Before the Court is the Plaintiffs' "Emergency Motion for Temporary Restraining Order and Preliminary Injunction," filed on June 8, 2012. See Docket No. 3. For the reasons explained below, the motion is denied.

**I.   BACKGROUND**

On December 21, 2011, the Tribal Council of the Turtle Mountain Band of Chippewa Indians ("Tribe") issued Resolution Number TMBC586-11-11 (Revised) which states, in pertinent part:

> WHEREAS,   the Tribe is initiating a business venture for providing a casino in the Trenton area; and
>
> WHEREAS,   the Tribe is entering into a development agreement to proceed with the business venture; now
>
> THEREFORE BE IN RESOLVED that the Tribe is entering in a development agreement with AGAMENV to proceed with plans for the casino in the Trenton area.

See Docket No. 1-3, p. 14.

On February 22, 2012, the Turtle Mountain Band of Chippewa Indians ("Tribe") entered into a Gaming Equipment Participation Agreement and Loan Agreement with plaintiff AGAMENV for the purpose of constructing and operating a new casino, the Painted Pony Casino. See Docket Nos. 1-3 and 1-5.

On April 30, 2012, Lorraine Laverdure, Gaming Investigator for the Tribe, sent a letter to plaintiff Ray Brown, one of the primary members of AGAMENV, stating, "This notice is to inform you that the Tribal Gaming Office has not received your application to Distribute Gaming Equipment and Supplies. Therefore, you will not be allowed to continue business with the Painted Pony Casino in Trenton, North Dakota." See Docket No. 1-8.

On May 2, 2012, the four Tribal Council members that had voted against the December 21, 2011 resolution filed a "Complaint and Petition For a Preliminary Injunction" in Turtle Mountain Tribal Court in Belcourt, North Dakota. See Docket No. 1-9. The plaintiffs in the Tribal Court action allege, in part:

> 5. That Plaintiffs have been unable to locate an applicable Resolution as is required by the Turtle Mountain Constitution to verify the approval of the Development Agreement that assigned all responsibilities, duties and covenants from AGAMENV (entered into on or around 11-11-11) to Dakota Gaming LLC.
>
> 6. That Plaintiffs have been unable to locate a Declination Letter from NIGC that would identify that the above Agreements Exhibit B were determined not to be considered Management Agreements and/or do not violate the "sole proprietor" requirement in the Indian Gaming Regulatory Act (IGRA).
>
> 7. That Defendants have failed to comply with the Turtle Mountain Tribal Gaming Code **Exhibit D** by failing to complete and submit applicable vendor's license applications as is required by the Gaming Code **Section 25-1-16** Commission's Powers and Duties, (b), (c) and have failed to provide access to the Tribal Gaming Commission so as to identify who the primary

>   management officials are, and who is to be employed at the Trenton site so that Gaming licenses can be issued,, in compliance with **Section 25-10-16** (c) and (f), and the Turtle Mountain Gaming Commission has not been allowed to view and approve the expenditures of any tribally operated Class II gaming enterprises in compliance with **Section 25-1-16** (h) of said Gaming Code.

See Docket No. 1-9 (errors and emphasis in original).  The plaintiffs requested the following:

1. Issuance of a Temporary Restraining Order, restraining Defendant from acting as Developer and performing the the actions identified in Exhibit B, the Agreements that Defendant would be responsible for and to be enjoined from continuing to violate the Turtle Mountain Gaming Code, and to be cease an attempt to open the Trenton property;

2. Issuance of a Preliminary Injunction enjoining Defendant from providing any services or operating as developer in regard to the Trenton property during the pendency of this action;

3. And on a final hearing, Defendant be permanently enjoined from being a party to this development so long as any applicable Turtle Mountain Tribal Laws or Regulations are not complied with.

4. Plaintiff requests such other and further relief as the Court deems proper.

See Docket No. 1-9 (errors in original).

On May 10, 2012, Tribal Court Associate Judge Andrew Laverdure issued an "Ex Parte Temporary Restraining Order and Preliminary Injunction and Order for Show Cause Hearing."  See Docket No. 1-10.  Judge Laverdure ordered as follows:

1. That the following Defendants: AGAMENV, LLC, aka Dakota Gaming, LLC, associated Investors, Ray Brown and Steven Haynes are hereby restrained from:

    a. Acting as Developer and performing the actions identified in Exhibit B, the Agreement, until such time as a Show Cause Hearing can be held;

    b. continuing to violate the Turtle Mountain Gaming Code;

    c. attempting to open the Trenton property;

3

       d.     providing any services or operating as Developer in regard to the Trenton property during the pendency of this action and until such time as a Show Cause Hearing can be held; and,

       e.     from being party to this development so long as any applicable Turtle Mountain Tribal Laws or Regulations are not complied with.

2. That the Clerk of Court schedule an order to show cause hearing to be held on June 8, 2012 at 1:00 pm at the Turtle Mountain Tribal Courthouse, Belcourt, North Dakota.

See Docket No. 1-10.

On May 12, 2012, the Turtle Mountain Tribal Council met and adopted a resolution which states, in part:

> WHEREAS, the tribe passed a resolution, by a 5-0 vote, entering into a gaming development contract with Dakota Gaming for the purposes of constructing the Painted Pony Casino in the Trenton Indian Service Area; and
>
> WHEREAS, four individuals, claiming to be acting on behalf of the government, filed for and received a preliminary injunction in an attempt to stop the Painted Pony Casino; now
>
> THEREFORE BE IT RESOLVED that the Turtle Mountain Band of Chippewa Indians officially withdraws the "complaint and request for preliminary injunction" and disavows the actions of Loren Jay, Mike Malaterre, Cindy Malaterre and Elmer Davis, Jr. acting as individuals, in their attempt to stop the Painted Pony Casino project. The Turtle Mountain Band of Chippewa Indians' official and properly promulgated position is that construction shall continue and the Painted Pony Casino should open for business on Friday, May 18th.

See Docket No. 1-11. The attorney for the Turtle Mountain Tribal Council subsequently filed a "Motion to Withdraw Complaint and Petition for Preliminary Injunction and to Vacate TRO and Preliminary Injunction." See Docket No. 1-11.[1]

---

[1] The Court notes that the motion to withdraw the complaint was filed in Tribal Court by a non-party to the litigation, a tactic the undersigned has never seen before in state or federal court.

On June 7, 2012, Judge Laverdure issued an "Order for Closure of the Painted Pony," which states:

> A Motion for Order of Contempt, filed by the petitioners in this matter, was received by the Court on June 1, 2012 and reviewed by the Honorable **Andrew Laverdure** on the **4th day of June, 2012**. After careful review, the Court now Orders issued an Order to show cause why the respondents should not be cited for civil contempt for violation of an Ex Parte Temporary Restraining Order and Preliminary Injunction issued on May 10, 2012.
>
> As grounds for the Motion, petitioners presented the following:
>
> 1. That the respondents were restrained from opening, developing and/or operating the Class II gaming facility identified as the "Painted Pony".
>
> 2. That the respondents, contrary to and in violation of the terms of the above referenced May 10, 2012 Order, opened the "Painted Pony" on or around May 25, 2012 and continue to operate said facility.
>
> The respondents are now notified and ordered to show cause why they should not be held in contempt.
>
> At issue is full compliance with a properly executed Ex Parte Restraining Order and Preliminary Injunction said Order for Show Cause Hearing issued by the Turtle Mountain Tribal Court on May 10, 2012. The Order for Show Cause, issued June 7, 2012, mandates compliance and requires closure. Further, Law Enforcement of the Bureau of Indian Affairs has been ordered to assist with compliance.
>
> IT IS HEREBY ORDERED that the Painted Pony Casino in Trenton, North Dakota be closed immediately until the matter is resolved in Turtle Mountain Tribal Court.

See Docket No. 1-12. Judge Laverdure scheduled a second show cause hearing for June 15, 2012.

On June 8, 2012, nearly a month after the Tribal Court had issued a temporary restraining order, AGAMENV, Ray Brown, and Steven Haynes filed a complaint and "Emergency Motion for Temporary Restraining Order and Preliminary Injunction" in federal district court. See Docket Nos. 1 and 3. The Plaintiffs allege the Tribal Council members are acting without the authority of the

council. Therefore, the Tribal Court has no jurisdiction and Judge Laverdure's orders are invalid. The plaintiffs request an order enjoining:

> (1) the Defendant Andrew Laverdure, in his purported capacity as an Associate Judge for the Turtle Mountain Tribal Court, from enforcing orders that he has already entered and/or from taking any further action in a Tribal Court proceeding commenced by the Defendants Mike Malaterre, Cindy Malaterre, Lorne Jay, and Elmer Davis purporting to act in their capacities as members of the Tribal Council of the Turtle Mountain Tribe of Chippewa Indians, against Plaintiffs and (2) the Defendants Mike Malaterre, Cindy Malaterre, Lorne Jay, and Elmer Davis from pursuing or instituting claims against Plaintiffs in the Turtle Mountain Tribal Court.

See Docket No. 3.

The Court is unaware of what transpired at the show cause hearing that was to be held on June 8, 2012, in Tribal Court.

## II.  LEGAL DISCUSSION

In determining whether a temporary restraining order should be granted, Rule 65(b) of the Federal Rules of Civil Procedure directs the court to look to the specific facts shown by an affidavit to determine whether immediate and irreparable injury, loss, or damage will result to the applicant.[2] In determining whether preliminary injunctive relief should be granted, the court is required to consider the factors set forth in Dataphase Sys., Inc., v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). Whether a preliminary injunction or temporary restraining order should be granted involves consideration of "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id.

---

[2] It should be noted that neither an affidavit nor a verified complaint was filed in this case in accordance with Rule 65(b) of the Federal Rules of Civil Procedure.

It is well-established that the burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Elec. Coop., Inc., 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987)).

### A.   **IRREPARABLE HARM**

The plaintiff must establish there is a threat of irreparable harm if injunctive relief is not granted and that such harm is not compensable by money damages. Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007) (citing Northland Ins. Co. v. Blaylock, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000)). "The 'mere possibility' that harm may occur before a trial on the merits is not enough." Johnson v. Bd. of Police Comm'rs, 351 F. Supp. 2d 929, 945 (E. D. Mo. 2004). The party that seeks the temporary restraining order must show a significant risk of harm exists. Doe, 514 F. Supp. 2d at 1135 (citing Johnson, 351 F. Supp. 2d at 945). The absence of such a showing is sufficient grounds to deny injunctive relief. Id. (citing Gelco v. Coniston Partners, 811 F.2d 414, 420 (8th Cir. 1987)).

The Plaintiffs allege they will suffer irreparable harm without injunctive relief because the "very existence" of their business is at stake. See Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986) ("Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the [petitioner]'s business"). The Plaintiffs have not established that

7

the very existence of their business is at stake.  They allege that they would have to expend time and resources litigating in a tribal court they believe has no jurisdiction, but they have not shown that this poses a risk to their business's existence.  Any loss resulting from the closing of the casino is potentially compensable by money damages.  This *Dataphase* factor weighs against granting a temporary restraining order.

### B. BALANCE OF HARM

The Plaintiffs allege a temporary restraining order would merely restore the status quo, and therefore the balance of harm weighs in their favor.  In the "Ex Parte Temporary Restraining Order and Preliminary Injunction and Order for Show Cause Hearing," Judge Laverdure found:

> 7.  That the plaintiffs would suffer irreparable harm in the absence of preliminary relief because of the Gaming Participation Agreement, and state "Should the Painted Pony be allowed to open for one day, the remaining term on the 83 month contract would be 2525 days @ 125/day (as listed in the proposal provided to the Tribe at the September 10, 2011 meeting) for 142 machines (according to machine list of 5/1/12).  Total due would be $44,818,750.00;"

See Docket No. 1-10.  The Court cannot determine, from the scant record before it, the penalties that would be suffered by the plaintiffs and/or the tribe and its members as a result of the temporary closure of the Painted Pony Casino.  This factor weighs neither in favor of nor against granting a temporary restraining order.

### C. PROBABILITY OF SUCCESS ON THE MERITS

When evaluating a movant's "likelihood of success on the merits" the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors

the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" Calvin Klein Cosmetics Corp., 815 F.2d at 503 (quoting Dataphase, 640 F.2d at 113). At this preliminary stage, the Court does not decide whether the party seeking the temporary restraining order will ultimately prevail. PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007). Although a temporary restraining order cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'" Id. (quoting Dataphase, 640 F.2d at 113). The Eighth Circuit has held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

The Plaintiffs argue the tribal court does not have jurisdiction and exhaustion of tribal remedies is not required. It is well-established that principles of comity require that tribal court remedies must be exhausted before a federal district court should consider relief in a civil case regarding tribal-related activities on reservation land. Krempel v. Prairie Island Indian Community, 125 F.3d 621, 622 (8th Cir. 1997) (citing Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9 (1987); Nat'l Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845 (1985); Bruce H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1412 (8th Cir. 1996)).

Exhaustion of tribal remedies means that tribal appellate courts must first have the opportunity to review the determinations of the lower tribal courts. LaPlante, 480 U.S. 9, 17. In short, "[t]he tribal exhaustion doctrine is based on 'a policy of supporting self-government and self-determination,'" and although the rule is prudential rather than jurisdictional, "[e]xhaustion is

mandatory . . . when a case fits within the policy." <u>Gaming World Int'l, Ltd. v. White Earth Band of Chippewa</u>, 317 F.3d 840, 849 (8th Cir. 2003) (citing <u>LaPlante</u>, 480 U.S. 9, 20 n.14; <u>Nat'l Farmers Union</u>, 471 U.S. 845, 856; <u>Duncan Energy Co. v. Three Affiliated Tribes</u>, 27 F.3d 1294, 1300 (8th Cir. 1994); <u>Burlington N. R.R. Co. v. Crow Tribal Council</u>, 940 F.2d 1239, 1245 (9th Cir. 1991)).

Although the criminal jurisdiction of tribal courts is subject to substantial federal limitation, <u>see</u> <u>Oliphant v. Suquamish Tribe</u>, 435 U.S. 191 (1978), their civil jurisdiction is not so restricted. <u>Iowa Mutual Ins. Co. v. LaPlante</u>, 480 U.S. 9, 15 (1987) (citing <u>National Farmers Union Ins. Cos. v. Crow Tribe</u>, 471 U.S. 845, 854-55 (1985). However, as a general rule, "absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances." <u>Strate v. A-1 Contractors</u>, 520 U.S. 438, 445 (1997) (citing <u>Oliphant</u>, 435 U.S. 191; <u>Montana v. United States</u>, 450 U.S. 544 (1981)). As the United States Supreme Court explained, "'the inherent sovereign powers of an Indian tribe' –those powers a tribe enjoys apart from express provision by treaty or statute– 'do not extend to the activities of nonmembers of the tribe.'" <u>Id.</u> at 445-46 (quoting <u>Montana</u>, 450 U.S. 544, 565)). Notwithstanding,

> Indian tribes [do] retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

<u>Montana</u>, 450 U.S. 544, 565-66 (citations omitted).

> <u>Montana</u> thus, described the general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its

10

members; the second concerns activity that directly affects the tribe's political integrity, economic security, health or welfare.

Strate v. A-1 Contractors, 520 U.S. 438, 446 (1997).

This dispute implicates both of the Montana exceptions. The Plaintiffs have chosen to enter into agreements with the Turtle Mountain Tribal Council to construct and operate a casino on reservation land. This dispute arises out of the formation of those contracts. Therefore, the dispute involves consensual relationships with the tribe or its members. The dispute also involves the internal operations of the tribal government, including the Turtle Mountain Tribal Council and the Turtle Mountain Tribal Court. This directly involves the tribe's political integrity. Questions regarding the Plaintiffs and the Tribal Council's compliance with the tribal constitution and tribal gaming code are best decided initially in tribal court and, if necessary, the tribal appellate court. The Court will not, at this early stage, inject itself into a tribal dispute involving the application of tribal law. Based on the scant record before the Court, the Plaintiffs have not established a likelihood of success on the merits. This *Dataphase* factor does not weigh in favor of granting a temporary restraining order.

### D.     PUBLIC INTEREST

The operation of the Painted Pony Casino and the employment and revenue it may generate are matters in the public interest. Compliance with the tribal constitution and tribal gaming code are also in the public interest. The Court is unable to reasonably determine the potential costs and benefits involved with the temporary closure of the Painted Pony Casino. This factor weighs neither in favor of nor against the issuance of a temporary restraining order.

### III.     CONCLUSION

After carefully reviewing the entire record and the *Dataphase* factors, the Court finds that the Plaintiffs have not met their burden of establishing the necessity of a temporary restraining order at this early stage of the litigation.  The Court notes that the Turtle Mountain Tribal Court issued a temporary restraining order on May 10, 2012, ordering the Plaintiffs to halt their involvement with the casino until after a hearing was conducted on June 8, 2012.  The Plaintiffs did not find it necessary to request relief from the federal court until the same day of the show cause hearing on June 8, 2012.  In other words, the dispute among the Tribal Council members, the Turtle Mountain Tribal Court, and the Plaintiffs has lingered for nearly one month.  This Court will not enter into this tribal dispute on such short notice.  The Court **DENIES** the Plaintiff's motion for a temporary restraining order (Docket No. 3).

Dated this 11th day of June, 2012.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court